Balbino Jimenez GARAY,
Plaintiff–Appellant,

v.

CARNIVAL CRUISE LINE, INC., et al.,
Defendants–Appellees.

No. 89–5319.

United States Court of Appeals,
Eleventh Circuit.

July 10, 1990.

---

Brett Rivkind, Miami, Fla., for plaintiff-appellant.

Rodney E. Walton, Kelley, Drye & Warren, Miami, Fla., for defendants-appellees.

Before FAY and KRAVITCH, Circuit Judges, and KAUFMAN *, Senior District Judge.

KRAVITCH, Circuit Judge:

Balbino Jimenez Garay ("Garay"), a seaman on board the vessel Tropicale, chartered by Carnival Cruise Lines, Inc. ("Carnival"), suffered severe head injuries when he fell down a flight of stairs on board the ship. Garay sued Carnival on the basis of maintenance and cure, and Jones Act negligence (including a claim for failure to provide adequate treatment) and unseaworthiness. Carnival asserted as a defense to maintenance and cure that the seaman had suffered injury as the result of his own willful misconduct, and the district court refused to grant Garay's motion for a directed verdict against Carnival on that defense. The jury found for the plaintiff only on his claim that the ship failed to provide him with prompt and adequate treatment. The district court, however, concluding that there was no evidence of Carnival's failure to treat promptly and adequately in accordance with its duties, granted Carnival's motion for judgment notwithstanding the verdict. 716 F.Supp. 1421. Garay appeals the grant of JNOV and the court's refusal to direct a verdict against Carnival on the willful misbehavior defense; he also challenges the admission of videotaped deposition testimony. We reverse the district court's failure to direct a verdict on the willful misconduct defense because, as a matter of law, the evidence was insufficient to establish any willful misconduct on the part of Garay.[1]

---

* Honorable Frank A. Kaufman, Senior U.S. District Judge for the District of Maryland, sitting by designation.

1. Garay assigns as error a number of the district court's instructions to the jury. Trial counsel, however, acquiesced in those instructions, and therefore the claims are waived on appeal. Under Fed.R.Civ.P. 51, the party objecting must state "distinctly the matter objected to and the grounds of the objection." *See McElroy v. Fire-*

## BACKGROUND

The accident occurred at approximately 7:30 in the evening. Garay had been ashore that afternoon, and between 2:30, when he went ashore, and 4:30, when he returned to the ship, he consumed four to six beers. On the way back to the ship he bought a bottle of vodka. Lazaro Ochoa, who saw Garay shortly before the accident, testified that he was intoxicated. The one crew member who saw the accident stated that Garay slipped on the third step, which was wet and waxy.[2] Others stated that after Garay's fall he smelled strongly of alcohol. Garay was given emergency treatment on board the vessel, temporarily placed in the ship's hospital, and was then taken ashore in Puerto Vallarta, Mexico, where the ship was docked. Thereafter he was evacuated to San Pedro, California, where he received brain surgery and continued to receive treatment at the defendant's expense for three weeks, at which time he was repatriated to Honduras.

Garay alleged that his injuries were caused by the defendant's negligence or by the unseaworthy condition of the vessel. He further alleged that he was entitled to maintenance and cure to the point of maximum medical improvement ("MMI"). Finally, he alleged that Carnival failed to provide prompt and adequate medical attention, and that such failure had aggravated his injuries. The jury found against Garay on the negligence and unseaworthiness claims. Further, the jury found that his injuries were the result of his own willful misbehavior, thus disentitling him to maintenance and cure. Finally, however, the jury found for the plaintiff in the amount of $275,000 to compensate him for Carnival's negligent failure to provide Garay with prompt and adequate medical care, which failure caused him additional pain and disability, or prolonged his recovery. The district court granted the defendant's motion for JNOV on the failure to treat claim, on the ground that there was no support for the claim under the law or the evidence provided: insofar as Garay alleged negligent treatment, there was no evidence to support the claim; and insofar as he alleged that he was discharged before attaining maximum medical improvement, that allegation did not state a claim under the failure to treat doctrine as the shipowner had no duty to treat to the point of MMI. We reverse the district court's refusal to grant a directed verdict on the issue of willful misconduct because, given the ship's tacit policy of permitting drunkenness on board, intoxication could not constitute willful misconduct on board the Tropicale.

## WILLFUL MISBEHAVIOR

A shipowner bears a large share of responsibility for the welfare of his crew. The seaman's life is hazardous—often requiring him to voyage far from shore, home, and medical help—and the shipowner must provide medical treatment and support for the seaman who becomes ill or is injured while in the service of the ship. Under maritime law, the seaman's right is called "maintenance and cure." Even if the seaman is injured through his own negligence, he does not forfeit his right to maintenance and cure.

*stone Tire & Rubber Co.,* 894 F.2d 1504, 1510–11 n. 10 (11th Cir.1990) (acquiescence); *Electro Services, Inc. v. Exide Corp.,* 847 F.2d 1524, 1528–29 (11th Cir.1988) (specific objection required). By way of example, we note the following: at the charge conference, Plaintiff's counsel stated that he "object[ed] to this one about the bad faith." By reviewing the transcript of the charge conference, we discern that counsel was referring to the punitive damages charge, but we are unable to identify the grounds for his complaint to the district court. Because counsel did not set forth the reasons for his objection, we conclude that the objection was not preserved.

Garay also complains of a discovery abuse relating to Ochoa's deposition. In light of *Britt v. Corporacion Peruana de Vapores,* 506 F.2d 927, 932 (5th Cir.1975), we find Garay's contention meritless.

2. The jury, finding that there was no negligence on the part of Carnival or unseaworthy condition on the vessel, apparently did not credit this witness's testimony. His description of who came to the scene of the accident and how Garay was treated was inconsistent with the accounts of all others who were there and testified.

Among the most pervasive incidents of the responsibility anciently imposed upon a shipowner for the health and security of sailors was liability for the maintenance and cure of seamen becoming ill or injured during the period of their service. In the United States this obligation has been recognized consistently as an implied provision in contracts of marine employment. Created thus with the contract of employment, the liability, unlike that for indemnity or that later created by the Jones Act, in no sense is predicated on the fault or negligence of the shipowner. Whether by traditional standards he is or is not responsible for the injury or sickness, he is liable for the expense of curing it as an incident of the marine employer-employee relationship.

*Aguilar v. Standard Oil Co.*, 318 U.S. 724, 730, 63 S.Ct. 930, 933–34, 87 L.Ed. 1107 (1943) (footnotes and citations omitted).

■ In *Warren v. United States*, the Court declared that a seaman will not lose his right to maintenance and cure unless he engages in "positively vicious conduct—such as gross negligence or willful disobedience of orders." 340 U.S. 523, 528, 71 S.Ct. 432, 435, 95 L.Ed. 503 (1951) (citations omitted). In *Farrell v. United States*, the Court described the general right of the seaman to maintenance and cure while noting the almost paternalistic duty of the shipowner toward the crew:

Aside from gross misconduct or insubordination, what the seaman is doing and why and how he sustains injury does not affect his right to maintenance and cure, however decisive it may be as to claims for indemnity or for damages for negligence....

It has been the merit of the seaman's right to maintenance and cure that it is so inclusive as to be relatively simple, and can be understood and administered without technical considerations. It has few exceptions or conditions to stir contentions, cause delays, and invite litigations. The seaman could forfeit the right only by conduct, whose wrongful quality even simple men of the calling would recognize—insubordination, disobedience to orders, and gross miscon-

duct. On the other hand, the Master knew he must maintain and care for even the erring and careless seaman, much as a parent would a child.

336 U.S. 511, 516, 69 S.Ct. 707, 709–10, 93 L.Ed. 850 (1949). In *Farrell*, the injured seaman was returning late from shore leave in disobedience of his orders. Nonetheless, the Court held that he was "entitled to the usual measure of maintenance and cure at the ship's expense...." 336 U.S. at 517, 69 S.Ct. at 710.

So broad is the shipowner's obligation that negligence or acts short of culpable misconduct on the seaman's part will not relieve him of the responsibility. Conceptions of contributory negligence, the fellow-servant doctrine, and assumption of risk have no place in the liability or defense against it. Only some wilful misbehavior or deliberate act of indiscretion suffices to deprive the seaman of his protection. The traditional instances are venereal disease and injuries received as a result of intoxication, though on occasion the latter has been qualified in recognition of a classic predisposition of sailors ashore.

*Aguilar*, 318 U.S. at 731, 63 S.Ct. at 934.

■ The law also recognizes that seamen must relax in order to work effectively. Accordingly, a seaman injured during the pursuit of recreational activities should receive maintenance and cure, whether the injury was suffered ashore or aboard. *Compare Warren*, 340 U.S. at 529–30, 71 S.Ct. at 435–36 *with Aguilar*, 318 U.S. at 734–35, 63 S.Ct. at 935–36. In *Warren* for example, a seaman ashore, having had some wine, albeit an insufficient amount to cause intoxication, leaned from an unprotected dance hall balcony, grabbed hold of an iron rod, and fell with resultant injury when the rod gave way.

■ If, however, the seaman is injured through his willful misconduct, the shipowner is relieved of his duty of providing maintenance and cure, and Garay argues that the district court erred in refusing to grant his motion for a directed verdict on the defense of willful misconduct raised by

Carnival. Garay presses two grounds: first, that the evidence was insufficient to establish intoxication, and, second, that even if the evidence of intoxication is sufficient, mere intoxication in this case does not establish willful misconduct.

### Evidence of Intoxication

■ According to Garay, there was insufficient evidence to support Carnival's claim that he was injured as the result of his intoxication. The facts, however, were as follows: Garay had been ashore drinking in the afternoon, imbibing four to six beers in the course of no more than two hours.[3] At the time of his accident, he was supposed to be in uniform and on duty as an assistant cabin steward, but according to Ochoa's testimony, Garay was out of uniform, "very intoxicated" and unable to perform his duties. Ochoa, however, provided no concrete basis for his opinion: he reported no indicia of drunkenness, such as staggering or slurred speech. A number of ship personnel who examined Garay after his accident, including the doctor and nurse, stated that he smelled strongly of alcohol. No tests were performed to determine the injured man's blood alcohol content, nor was there any evidence of motor coordination problems as the patient was unconscious.

The testimony of persons who examined Garay after his fall and while he was unconscious that his breath smelled of alcohol is extremely weak evidence of intoxication in that a person who consumed no more than one beer would have the smell of alcohol on the breath. Nevertheless, Garay concedes in his brief that considering "the evidence at trial in the light most favorable to the Defendant, the Plaintiff fell down the stairs in an intoxicated condition." In light of the evidence, reasonable jurors could have concluded that Garay was intoxicated. *Cf. Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en

banc) (where there is "evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions" motion for directed verdict should be denied).[4]

### Legal Effect of Permitted Intoxication

■ There remains the question of whether evidence of intoxication can, as a matter of law, on the facts of this case constitute willful misconduct.

Garay argues that the evidence of intoxication, without more, is not enough to demonstrate willful misconduct because drinking and even drunkenness by crew members were permitted on board. We agree. Where the crew is permitted to drink, even to the point of drunkenness, and the ship's captain and officers are aware that crew members have been, are, and will be drunk on board, and the ship does not prohibit such behavior on the part of the crew, we cannot say that a seaman who indulges in intoxicating liquors is engaging in "willful misconduct" that is "positively vicious" or the deliberate disobedience of orders.

This is not a case like *Reyes v. Vantage S.S. Co.,* 558 F.2d 238 (5th Cir.1977), *modified,* 609 F.2d 140 (1980) (clarifying causation) where the ship was unseaworthy because it was operated like a "floating dram shop." 558 F.2d at 244. In this case, the unseaworthiness claim was laid to rest by the jury verdict. The focus here is on the seaman's conduct and whether it constituted willful misbehavior. The ship policy concerning the consumption of alcohol and the sobriety of seamen is relevant in considering whether or not Garay was willfully misbehaving by being intoxicated on board. Where the shipowner condones drunkenness aboard his vessel, we cannot say that a seaman who is drunk is willfully misbehaving, such that we could term the conduct "positively vicious ..., such as gross negligence or willful disobedience of

---

**3.** Although he purchased a liter bottle of vodka before returning to the ship, we do not attach great importance to that fact because there was no evidence that the bottle of vodka was ever opened.

**4.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

orders." *Warren*, 340 U.S. at 528, 71 S.Ct. at 435.

Our decision is not contrary to *Dailey v. Alcoa Steamship Co.*, 337 F.2d 611 (5th Cir.1964) where the court of appeals explicitly affirmed the district court's ruling that the seaman's "intoxication constituted misconduct barring recovery [from the shipowner]." 337 F.2d at 612. The seaman there, a chronic alcoholic, was absent from his ship without leave in disobedience of his orders. While ashore and intoxicated, he fell from a bar stool and broke his leg. The court stated that "[w]hen the seaman's injuries are caused by his intoxication, they are held to be occasioned by his misconduct, thus relieving the shipowner of the duty to provide maintenance and cure." *Id.* (quoting from and affirming order of district court). Significantly, the district court found that Dailey had "violated the orders of his superior officer to the extent that discharge from employment therefore was in order at the discretion of his superior officer." 337 F.2d at 612 (quoting from district court order).

In the instant case, however, the ship's crew testified that drinking and drunkenness were expected and condoned, and that dismissal would be an unusual result. Seaman Ochoa agreed that it was "[O]kay to be drunk as long as you didn't disturb or bother anyone else...." Seaman Chimilo declared that when the ship was in port, he saw "many seamen in the kitchen drunk ... that's a normal thing, you know, when the ship arrives to port, everybody drinks." Carnival's Director of Operations stated that drinking by crew while on the ship was "part of the recreation to let them relax after working during the day, to sit down and have a drink." In fact, the ship provided a crew bar, where crew members could buy unlimited beer. Further, crew members could purchase spirits in the ship's gift shop. The Staff Captain, Mario Casari, testified in his deposition that "normal drinking" was accepted, by which he meant "You drink a couple of beers during the day and having been a little bit drunk a couple of times, two or three times a month, you know, that's basically what is a little bit overlooked and basically accepted." He added that a seaman shouldn't drink so much that he was "dangerous" to himself or others, but he added, "[Y]ou couldn't fire anybody because he is drinking once in a while." Casari stated that he knew he would have drunk crew members on board, and he admitted that a seaman's frequent drunkenness would be tolerated "[i]f he was not causing any problems and if he was doing his job.... We tried not to fire people." Explaining why the ship both declined to fire intoxicated seamen and provided an onboard crew bar, Casari acknowledged, with unintended irony, "You can't look both ways." We agree. Carnival cannot look on a seaman's drunkenness as a tolerable and acceptable condition, tacitly encouraged by the rarity of any imposition of discipline, and operation of the crew bar, and at the same time ask us to view Garay's alleged intoxication as willful misconduct.[5]

As a matter of law, therefore, we hold that the defense of willful misconduct is not available to Carnival because drunkenness on the part of seamen was not "misconduct" on board the Tropicale. The district court thus erred in failing to grant Garay's motion for a directed verdict on willful misconduct. *Cf. Boeing Co. v. Shipman*, 411 F.2d at 374.

We emphasize that this decision should not be read as a holding that intoxication cannot constitute willful misbehavior; shipowners may avoid maintenance and cure payments for a seaman's injuries caused by intoxication if the shipowner makes clear that intoxication is misconduct, is considered misbehavior by the shipowner, and is treated as such.

### JONES ACT CLAIM ON PROMPT AND ADEQUATE MEDICAL CARE

 In addition to maintenance and cure, a seaman may recover against a shipowner

---

**5.** That Garay was absent from his work station does not mandate a contrary result as his absence from work was not the cause of his injury, nor was it the sort of "positively vicious" conduct that should disentitle him to maintenance and cure.

under the Jones Act if the shipowner was negligent or the ship was unseaworthy. A shipowner's failure to pay maintenance and cure not only give rise to a claim for maintenance and cure, but may also support a cause of action under the Jones Act for breach of the duty to provide maintenance and cure. *See infra* note 8.

The district court set aside the jury's award of damages on the failure to provide prompt and adequate medical care, reasoning that the shipowner had breached no duty to provide treatment to the point of MMI because that duty of treatment only arises when the shipowner is under a duty to provide maintenance and cure. As a result, Garay argued to this court on the theory that he should recover under the Jones Act because his "premature" discharge was negligent, regardless of any duty under maintenance and cure to provide treatment until MMI. That argument is without merit.[6] Nonetheless, given our disposition of the willful misconduct issue, it is clear that Garay was entitled to cure. Moreover, the law is clear that a seaman is entitled to cure until he is declared to have reached maximum medical improvement. *Cf. Vella v. Ford Motor Co.*, 421 U.S. 1, 4–6, 95 S.Ct. 1381, 1383–84, 43 L.Ed.2d 682 (1975) (maintenance and cure continues until such time as the incapacity is declared to be permanent).

Garay raises this argument under the rubric of failure to provide prompt and adequate treatment, but the duty of the shipowner to provide such treatment stems, as a general matter, from the shipowner's duty to provide maintenance and cure, which is anchored in ancient maritime law.[7] Certainly if the shipowner had a duty to provide care to the point of MMI, as a shipowner would if the seaman were entitled to maintenance and cure, then discharge before the attainment of MMI would be a breach of the duty owed under maintenance and cure.[8]

The jury verdict, as expressed in the special interrogatories, is inconsistent. For example, the jury found that there was no negligence on the part of Carnival and that Garay was not entitled to cure because of his willful misconduct, but the jury nonetheless awarded the plaintiff $275,000 for the "additional pain, disability or prolonged suffering [caused by Carnival's failure] to promptly provide [sic] him with adequate medical care." The only theory presented to the jury upon which it could have found inadequate treatment was Carnival's refusal to pay for further cure as there was no allegation that the treatment actually provided was negligent or inadequate. Indeed, Garay's complaint was that he was denied the continuation of the treatment,

**6.** Although a seaman's willful misconduct will disentitle him to maintenance and cure, the shipowner still promptly must provide adequate emergency medical care (as is reasonable under the circumstances) for the injured seaman. This naturally follows from the nature of the seaman's work. Even if injured through his own willful misconduct, the seaman is at the mercy of the shipowner. The seaman may be many miles offshore, unable to leave the ship and unable to obtain his own medical care. The law, therefore, requires the shipowner to provide such prompt and adequate medical care as is reasonable under the circumstances. *See Barlow v. Pan Atlantic S.S. Corp.*, 101 F.2d 697 (2d Cir.1939); *cf. The Iroquois*, 194 U.S. 240, 24 S.Ct. 640, 48 L.Ed. 955 (1904) (where seaman injured in service of ship, master had duty to put in to port in order to provide adequate treatment).

The shipowner in this case provided prompt and adequate emergency care on board the vessel, and further provided for evacuation ashore to the local port and later to better medical facilities in San Pedro. As the district court

noted below, where there is no duty to provide maintenance and cure, the shipowner's duty to provide non-negligent medical care would, if construed to the limits of MMI, swallow up maintenance and cure.

**7.** Ancient codes of the sea provided the seaman's right to maintenance and cure long before Congress saw fit to enact the Jones Act. For example, the laws of Oleron, promulgated about 1200 A.D. laid forth the forerunner to modern maintenance and cure. *See* 1B *Benedict on Admiralty* § 41.

**8.** Indeed, the negligent refusal to provide maintenance and cure may give rise to a tort action under the Jones Act. *Picou v. American Offshore Fleet, Inc.*, 576 F.2d 585, 587–88 (5th Cir. 1978); *see also Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir.1987) (punitive damages and attorney's fees); *De Centeno v. Gulf Fleet Crews, Inc.*, 798 F.2d 138, 140 (5th Cir.1986) (vicarious liability for negligent medical treatment by physician selected by shipowner).

not that the treatment was defective. Unless Carnival had a duty, however, to provide further medical treatment, the refusal to continue treatment was no breach. The jury verdict on damages for failure to provide adequate medical treatment is not a proxy for a determination of damages on the maintenance and cure issue because the jury was instructed that it should award damages for failure to provide adequate treatment based on the "aggravation portion only of the plaintiff's injuries." The district court explicitly instructed the jury that the aggravation damages could not duplicate the award of damages for claims under the Jones Act or maintenance and cure.

■ Because the district court erred in refusing to grant Garay's motion for a directed verdict on Carnival's defense of willful misconduct, the subsequent jury findings are unreliable. Had the directed verdict been granted, the jury would have been compelled to find that Garay was entitled to maintenance and cure. Having concluded that Garay was entitled, as a matter of law, to maintenance and cure, it is for the trier of fact to determine the amount due. Once the shipowner was under a duty to supply maintenance and cure, the shipowner's failure to comply could have been a breach under the Jones Act.[9] That theory, however, was neither argued to the jury nor presented by the plaintiff's requested instructions; we decline to remand for trial of an issue that was neither presented to the initial jury, nor presented to us on appeal. The jury's seaworthiness conclusion is in no way affected by this appeal.

Carnival argues that the punitive damage claim should have been dismissed by the district court, and that on remand the plaintiff should not be permitted to present his claim for punitive damages. The claim for punitive damages, however, is implicated by our decision that Garay was entitled to maintenance and cure, as the jury was instructed that if the plaintiff was entitled to maintenance and cure and the shipowner arbitrarily and willfully refused to provide it, then the plaintiff was entitled to recover punitive damages.[10] Willfulness and arbitrariness were defined as "without reason or with callous disregard for the claim of the seaman," and the jury is well-suited to make such a determination. Now that we have determined that Garay was entitled to cure, a jury could find that the failure to provide it was arbitrary and willful. We intimate no view of the merits of Garay's claim, as that is not our province. On remand the trier of fact should determine the amount of maintenance and cure due Garay, and whether punitive damages should be awarded.

### CONCLUSION

Because as a matter of law Garay's conduct did not constitute willful misconduct, the district court erred in failing to grant his motion for a directed verdict on that issue. Accordingly, Garay is entitled to a new trial on the damage issues stemming from our reversal.

We therefore REVERSE and REMAND.

---

**9.** *See supra* note 8.

**10.** Carnival also suggests that *Hines v. LaPorte, Inc.,* 820 F.2d 1187 (11th Cir.1987), which provides for the recovery of punitive damages and attorney's fees, was wrongly decided. We see no error in *LaPorte,* and moreover, only an en banc court or the Supreme Court can overrule circuit precedent.