**Ian THOMAS, Plaintiff,**

**v.**

**NEW COMMODORE CRUISE LINES LIMITED, INC., Defendant.**

**No. 99–3313–CIV.**

United States District Court,
S.D. Florida.

May 22, 2002.

David H. Pollack, Miami, FL, Charles R. Lipcon, Miami, FL, for plaintiff.

William Barry Milliken, Coral Gables, FL, for defendant.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

HOEVELER, District Judge.

THIS CAUSE comes before the Court upon the Defendant's Motion for Summary Judgment, filed February 19, 2002. The Plaintiff responded on March 18, 2002.

### Background

On September 17, 1999, the Plaintiff, Ian Thomas, entered into a Crew Employment Contract with the Defendant, New Commodore, to work aboard the S/S "Enchanted Capri." As provided in the Plaintiff's Crew Employment Contract with the Defendant, the Plaintiff's hiring was contingent on a pre-employment physical which included testing for HIV. On September 19, 1999, the Plaintiff boarded ship. Upon realizing that the Plaintiff had not undergone the required testing, the Defendant referred the Plaintiff to the Marine Medical Unit in New Orleans for his pre-employment physical and required HIV screening. The results from a blood test collected on September 24, 1999 revealed that the Plaintiff was HIV positive. The Plaintiff brought this action, in part, to recover maintenance and cure based on his testing positive for HIV.

On November 22, 2000, the Defendant filed its first Motion for Summary Judgment. On January 7, 2002, the Court entered an Order denying summary judgment, stating that more discovery was required and allowing the Defendant to submit a subsequent motion upon completion of such discovery. Having taken the Plaintiff's deposition, the Defendant submitted this Motion .

### Standard

Rule 56(C) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate only where the moving party is entitled to judgment as a matter of law. A court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The purpose of the summary judgment rule is to dispose of unsupported claims or defenses which, as a matter of law, raise no genuine issues of material fact suitable for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party who moves for summary judgment bears the initial burden "to show the district court, by reference to materials on file, that there is no genuine issue of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929

F.2d 604, 608 (11th Cir.1991). A court must view the evidence presented in a light most favorable to the non-moving party.

However, once the moving party meets his initial burden, "the burden shift[s] to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.* at 608. The non-moving party may not rest upon mere allegations or denials in his pleadings, but must set forth specific facts, through affidavits or the other forms of evidence provided for by the rules. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Essentially, "the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505. With this standard in mind, we address Defendant's Motion for Summary Judgment.

### Analysis

In his second Motion for summary judgment, the Defendant reasserts its argument that a seaman's right to maintenance and cure does not apply where the illness or injury for which the seaman seeks recovery arises from his own vices. The law is well established that maintenance and cure is not available when a seaman's injury results from either voluntary intoxication or venereal disease. *See Aguilar v. Standard Oil Co.*, 318 U.S. 724, 731, 63 S.Ct. 930, 87 L.Ed. 1107 (1943). At least one Court has specifically held that the venereal disease exception applies to HIV and neither the Plaintiff nor the Court has been able to find any case holding contrary. *See Bynum v. Premier Cruise Lines, Ltd., Inc.*, 1994 WL 617067, 1994 A.M.C. 2185 (M.D.Fla.1994). Thus, because the Plaintiff is seeking maintenance and cure based on HIV, this

would appear to be a clear application of the *Aguilar / Bynum* rule.

The Plaintiff, however, argues that notwithstanding *Bynum*, HIV should not be considered a venereal disease for purposes of the exception to maintenance and cure. The Plaintiff, nonetheless, has presented no convincing basis for distinguishing HIV from other venereal diseases. Both HIV and other venereal diseases can be contracted through one single sexual contact. Both are occasionally transmitted through means other then sexual intercourse. Both have been and continue to be a source of social stigma. Importantly, an employer has a very limited ability to prevent employees from contracting both HIV or other venereal diseases. Therefore, the Plaintiff has presented and the Court can find no basis for distinguishing HIV from other venereal diseases for purposes of maintenance and cure and the Court declines to do so.

Second, the Plaintiff argues that *Bynum* is distinguishable because in that case it was clear that the seaman contracted HIV through sexual contact whereas in the present case there is some ambiguity as to how the Plaintiff contracted HIV. *Id.* at *1 The Plaintiff has presented, however, only two possible ways he may have contracted HIV. First, he may have contracted HIV when his condom broke during intercourse. *See* Thomas Dep. at 15. The other possibility is that he contracted the virus from "dealing" with bloody sheets and needles. *Id.*

The Defendant has presented the testimony of Stewart Macintyre, who is licensed to practice medicine in Florida and specializes in the treatment of infectious disease. Dr. Macintyre testifies that "One cannot contract HIV by the mere handling of bloody sheets or needles. One can never contract HIV from the mere handling of bloody sheets. With regard to the han-

dling of needles, two things have to occur: (1) the needle has to be contaminated with HIV; and (2) Mr. Thomas would have had to been [sic] punctured by the contaminated needle." Dr. Macintyre Aff. at ¶ 4. The Plaintiff has presented no evidence to contradict the testimony of Dr. Macintyre.

The Plaintiff argues that it is possible he was punctured by a needle. When asked whether he was ever punctured by a needle, however, the Plaintiff stated "Well, can't say that I can recall that can't recall that but, you know—can't say recall that, no." Thomas Dep. at 15. The Plaintiff's response tends to show that he was never punctured by a needle, as getting punctured by a used needle is the type of event a person would generally remember. Regardless, however, the mere possibility that the Defendant was punctured by a needle but has no recollection of it, is not enough to create a triable issue of fact. Because the Plaintiff has presented no evidence that he contracted HIV from anything other than sexual contact, there is no basis for distinguishing *Bynum*

The Plaintiff makes a third argument, which is that summary judgment is foreclosed by *Garay v. Carnival Cruise Line, Inc.*, 904 F.2d 1527 (11th Cir.1990) In *Garay*, an intoxicated seaman fell down a flight of stairs on board ship. The defendant asserted "wilful misconduct" as a defense, because the seaman was intoxicated. The Court held that willful misconduct is not a defense to maintenance and cure when such conduct is condoned by the shipowner. The Court found that the conduct was condoned in *Garay* because (a) the ship provided the crew with "unlimited beer"; (b) the ship's crew testified that "drinking and drunkenness were expected and condoned, and that dismissal would be an unusual result"; and (c) the ship's captain testified that "he knew he would have drunk crew members on board, and he admitted that a seaman's frequent drunkenness would be tolerated."

*Garay* is distinguishable from this case for a number of reasons. First, injuries received as a result of intoxication are distinguishable from injuries received from venereal disease, as *Garay* itself notes, because the intoxication defense has been qualified whereas the venereal disease defense has not been. *See Id.* at 1530 ("The traditional instances are venereal disease and injuries received as a result of intoxication, though on occasion the latter has been qualified in recognition of a classic predisposition of sailors ashore.") (*quoting Aguilar v. Standard Oil Co.*, 318 U.S. 724 731, 63 S.Ct. 930, 87 L.Ed. 1107 (1943)). Injuries received as a result of intoxication are further distinguishable from injuries received from venereal disease, because it is practical to expect shipowners and captains to know whether their seaman are regularly intoxicated, whereas it is impractical to expect them to know whether seaman are engaging in private activities which might lead to the spread of venereal disease.

Finally, in *Garay*, the Court found that the shipowners not only condoned drinking but actually condoned drunkenness (i.e. drinking to excess). Thus, to be analogous in the realm of venereal disease, a shipowner would have to be aware of and condone, not just sexual activities generally, but promiscuity or other dangerous sexual activities. This fact-pattern is unlikely to ever arise and certainly is not present in the case at bar.

Even if the general principle of *Garay* applied to venereal disease, the holding would still not help the Plaintiff under the facts of this case. In *Garay* ample evidence was presented that the Defendants (a) were aware that the misconduct occurred regularly; (b) tolerated the frequent misconduct; and (c) provided the

seaman with the means to engage in the misconduct. Sexual activities are, by their nature, private and in the present case, the Plaintiff has presented no evidence that the Defendant was aware of promiscuity or other dangerous sexual activities occurring. The only evidence the Plaintiff has presented is the fact that the Defendant provided condoms in a bowl in the ship's medical facility. *See* Thomas Dep. at 22. This does not suggest that the Defendant was aware of or was encouraging promiscuity. To the contrary, it indicates that the Defendant was actively attempting to prevent the spread of sexually transmitted disease, a fact for which it should be applauded rather than punished. Unlike *Garay*, in which the employer was providing the seamen with the means to engage in misconduct and a means likely to cause injury, here the employer was providing a means of avoiding injury. Analogously, a ship owner is not encouraging seaman to run around recklessly on the deck of the ship when he provides life-vests, safety lines, and other life saving equipment. Thus, *Garay* is of no help to the Plaintiff in this case

■ Finally, the Plaintiff argues without citation, that "venereal disease is no longer a defense to a maintenance and cure clam" because it was "displaced by Congress when it enacted the ADA." Pl.'s Resp. at 3–5. This Court finds that the defense was not displaced by the Americans With Disabilities Act ("ADA").

■ "The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." *Wilhelm Pudenz, GmbH v. Littlefuse Inc.*, 177 F.3d 1204, 1210 (11th Cir.1999) (quoting *Midlantic Nat'l Bank v. New Jersey Dep't of Environmental Protection*, 474 U.S. 494, 501, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986)) Nothing in the ADA statute suggests that Congress intended to

have any effect on the doctrine of maintenance and cure or specifically the venereal disease defense. The ADA was passed in July of 1990. Since then, numerous Courts have applied the venereal disease defense without hesitation *See e.g. West v. Midland Enterprises, Inc.*, 227 F.3d 613 (6th Cir.2000); *Protogyrou v. Lines*, 42 F.3d 1386 (4th Cir.1994) (*unpublished disposition*); *Silmon v. Can Do II, Inc.*, 89 F.3d 240 (5th Cir.1996); *Bynum*, 1994 WL 617067. The idea of treating HIV and other venereal diseases differently for purposes of maintenance and cure is a logical one, because unlike other accidents and diseases, there is very little an employer can do to prevent the spread of venereal diseases. Thus, requiring employers to pay for venereal diseases will do little to prevent the problem. In sum, no Court has held that the ADA has eviscerated the venereal disease exception and this Court declines to do so today.

■ The Plaintiff then seems to argue that even if the entire venereal disease exception is not abrogated, the exception cannot apply to HIV, because the ADA specifically includes HIV as a disability. *See* Pl.'s Resp. at 4. The Supreme Court, however, has made clear that HIV is not a *per se* disability under the ADA. *See Bragdon v. Abbott*, 524 U.S. 624, 641–42, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (declining to hold that HIV is a *per se* disability); *Toyota Motor Mfg., Kentucky Inc. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual...The determination of whether an individual is substantially limited in a major life activity must be made on a case-by-case basis") (quoting 29 CFR pt. 1630, App. § 1630.2(j)

(2001)); *see also* 42 USCA § 12102. Thus, the ADA does not treat HIV differently than any other venereal disease or any other disease for that matter.

Moreover, to the extent that HIV is found to be a disability in a given case, the ADA requires that employers treat people with HIV no differently than they would treat people with other disabilities and diseases. Here the Plaintiff is actually asking the employer to do the opposite: to treat HIV victims differently than it would treat people with every other venereal disease. This seems to conflict with the basic premises of the ADA's treatment of HIV and other diseases. Nothing in the ADA suggests that HIV victims should be given special treatment.

Finally, it appears that the Plaintiff is not arguing that the Defendant actually violated ADA, only that the *Bynum* rule has been abrogated by the ADA. However, any claim that the Defendant violated ADA must fail. First, the Plaintiff has not brought an ADA claim. Second, by failing to provide maintenance and cure for seaman injured as a result of venereal disease, the employer is not discriminating. He is merely following the well-established law. *See Ellenwood v. Exxon Shipping Co.*, 984 F.2d 1270, 1284 (1st Cir.1993) (holding that maintenance and cure differs from rights normally classified as contractual because the duty to provide maintenance and maintenance and cure is imposed by the law itself.) Third, it appears that the Plaintiff was hired contingent to his being "HIV free" and thus when the Plaintiff tested positive for HIV, he did not meet the prerequisites of his employment and was not entitled to further employment or the benefits thereof. Finally, the Plaintiff has not presented and the Court has not found a single case holding that maintenance and cure can be considered "compensation" or a "privilege of employment" for purposes of ADA. In short, the

Plaintiff has provided the Court with no argument or law which suggests that the venereal disease defense has been eviscerated by the ADA or that the defendant violated the ADA.

Therefore, having been advised in the premises, it is hereby ORDERED AND ADJUDGED that the Defendant's Motion for Summary Judgment is GRANTED. This case is CLOSED and all pending motions are DENIED AS MOOT.