**FOUNDERS INSURANCE COMPANY, an Illinois Corporation, Plaintiff,**

v.

**Susan TOME, as Personal Representative of the Estate of Weston Tome, Deceased and 176 N. Beach Street Inc., Defendants.**

**Case No. 6:10–CV–973–ORL–36GJK.**

United States District Court, M.D. Florida, Orlando Division.

March 2, 2012.

David B. Krouk, Butler Pappas, LLP, Tampa, FL, for Plaintiff.

Mark A. Matovina, Politis & Matovina, P.A., Port Orange, FL, Susan W. Tolbert, Morgan & Morgan, P.A., Daytona Beach, FL, for Defendant.

176 N. Beach Street, Inc., Daytona Beach, FL, pro se.

### ORDER

CHARLENE EDWARDS HONEYWELL, District Judge.

**THIS CAUSE** comes before the Court on Plaintiff Founders Insurance Company's ("Plaintiff" or "Founders") Motion for Summary Judgment (Doc. 33). Defendant Susan Tome, as Personal Representative of The Estate of Weston Tome, Deceased ("Defendant" or "Tome Estate") filed a Response in Opposition to Plaintiff's Motion for Summary Judgment (Doc. 45). Plaintiff filed a Reply in further support of its Motion for Summary Judgment (Doc. 46). This Motion is now ripe for review.

Upon due consideration of the record, for the reasons stated below, the Court will grant Plaintiff's Motion for Summary Judgment.

## I. BACKGROUND AND FINDINGS OF FACT

### A. *The Parties and Relevant Policy Language*

176 N. Beach Street, Inc. ("NBSI") is a Florida corporation which owns and operates both the Coliseum Center for the Performing Arts ("The Coliseum"), a nightclub and live music venue located at 176 N. Beach Street, Daytona, Florida and The Arena Sports Cafe (the "Arena") located at 180 N. Beach Street, Daytona, Florida. Doc. 33, pp. 1–2; Doc. 40, ¶ 4. On August 19, 2008, NBSI completed a commercial insurance application indicating that the premise to be insured for "The Coliseum" is "176 N. Beach Street, Daytona Beach, FL 32114." Exhibit to the Deposition of Randy Berner, taken May 24, 2011 (Berner Dep.), Doc. 35–3, pp. 162–65. The nature of the business is stated as "National Acts—There is no seating and the occupancy permit shows 1,210." *Id.* Plaintiff issued a Commercial General Liability Coverage Policy No. CPFL000279 to NBSI for the policy period beginning September 11, 2008 through September 11, 2009. (the "Policy", Doc. 40–1). For purposes of this litigation, the applicable portion of the policy is the Florida Liquor Liability Coverage Part. It provides, in pertinent part:

> Subject to *Exclusions to Coverage* (Paragraph 2 below), this insurance applies to "injury" only if the "injury" occurs as a direct result of an "insured" selling, serving, or furnishing alcoholic beverages on the "insured premises" during the policy period.

(Doc. 40–1) The Policy then defines "insured premises" to be the location listed

on the Declarations page, which lists the "insured location address" as:

COLISEUM CENTER FOR PER-FORMING
ARTS 176 N BEACH STREET INC
176 N BEACH ST
DAYTONA BEACH FL 32114

(Doc. 40–1, p. 2.). As provided in the policy, the insured premises under the Policy is 176 N. Beach Street, Daytona Beach, FL 32114.

The Arena is a restaurant and sports bar for which NBSI is also the registered owner. (Berner Dep. Ex., Doc. 35–3). NBSI filed two Applications for Registration of Fictitious Name on May 13, 2008. (Doc. 35–3, p. 106). One application listed the fictitious name to be "The Coliseum Center for the Performing Arts," indicating it was located at 176 N. Beach Street, Daytona, Florida 32114, and the other application listed the fictitious name to be registered as "The Arena Sports Bar & Grill," indicating its location at 180 N. Beach Street, Daytona Beach, Florida. *Id.*, p. 106–07. On May 15, 2008, NBSI executed two property lease agreements for the locations of 176 and 180 N. Beach Street. The lease entered into for operating The Coliseum lists the tenant as "176 North Beach Street, Inc. D/B/A The Coliseum Center for the Performing Arts," and describes the premises as "located on the first floor at 176 North Beach Street, Daytona Beach, Florida, or approximately 18, 298, 67 square feet." (Doc. 35–3, p. 23). NBSI's second lease agreement lists the tenant as "176 North Beach Street, Inc. D/B/A The Arena Sport's Bar & Grill" describing the premises as "located on the first floor at 180 North Beach Street, Daytona Beach, Florida, or approximately 10,-649.21 square feet." *Id.*, p. 41.

Prior to Founders' issuance of the Policy, Lantana Insurance Ltd. ("Lantana") issued a Commercial General Liability Coverage policy, Policy Number RLE400217–08 to NBSI. Lantana's policy to NBSI covers the period from August 28, 2008 through August 28, 2009, and defines the liquor liability coverage premises as "180 N. Beach Street Daytona Beach, FL 32114" listing "Restaurant" as the description of the insured premises. Doc. 35–3, pp. 65–66.

**B. The Underlying Accident**

The events giving rise to this dispute occurred on the evening of October 30–31, 2008, when both parties agree that Weston Tome was involved in an automobile accident in Ormond Beach, Florida and sustained fatal injuries. (Parties Stipulation of Undisputed Facts, filed on September 2, 2011, Doc. 44 at ¶ 1.) Tome's passenger Kyle Lavelle sustained serious physical injuries. Doc. 1, ¶ 11. The Florida Traffic Crash Report indicates that Weston Tome had been at The Arena and was heading to his house when he lost control of his vehicle. Doc. 33–1.

**C. The Underlying Litigation**

Following the accident, Kyle Lavelle sued NBSI with respect to its operation of The Arena, naming the defendant as "176 N. Beach Street, Inc. d/b/a Arena Sports Bar." Doc. 33–2, ¶ 9. Around July 22, 2009, Lantana settled with Lavelle pursuant to a confidential settlement agreement, tendering the one million dollar ($1,000,000) policy limit to Lavelle. *Id.*, ¶ 10.

Subsequently, on February 16, 2010, the Tome Estate filed a wrongful death action against NBSI alleging liability based upon the service of alcohol to Weston Tome at The Arena Sports Bar in violation of Florida Statute section 768.125. (Doc. 40–2). This action alleged that Tome was served alcoholic beverages by employees of The Arena, and consumed numerous alcoholic

beverages by employees of The Arena, to the extent that he became intoxicated and impaired. *Id.*, ¶¶ 10–11. Lantana disputed coverage for the claim against The Arena and filed an action for declaratory judgment because its policy limits were exhausted upon the tender of its policy limit to Kyle Lavelle. (Doc. 33–2, ¶ 15). Judgment was entered in favor of Lantana on July 22, 2010. (Doc. 33–3).

On March 12, 2010, the Tome Estate amended its complaint, renaming the Defendant as "176 N. Beach Street, Inc., d/b/a The Arena Sports Bar & Grill and d/b/a The Coliseum Center for Performing Arts," alleging liability pursuant to section 768.125 based upon the service of alcohol to Tome at the Arena Sports Bar *and* The Coliseum Performing Arts Center. (Doc. 40–3, ¶ 11). Default was entered against NBSI on September 24, 2010. (Doc. 10).

### D. *Procedural History*

Founders filed an action for declaratory judgment against the Tome Estate and NBSI to determine whether Founder's Policy extends coverage for the underlying claims presented by the Tome Estate against NBSI, and if Founders owes a duty to defend and indemnify NBSI for such claims. (Complaint filed June 25, 2010, Doc. 1; Amended Complaint filed August 12, 2011, Doc. 40). In its Motion for Summary Judgment, Founders asks the Court to find: (1) that Policy No. CPFL000279, issued to NBSI insures against liability arising from the selling, serving, or furnishing alcoholic beverages at The Coliseum located at 176 North Breach Street in Daytona Beach, Florida; and (2) because there is no evidence that decedent Weston Tome was sold, served or furnished alcoholic beverages at The Coliseum, there is no duty to defend or indemnify NBSI for the claims asserted by the Tome Estate. (Doc. 33, pp. 4–5.) In its

Response in Opposition to Founder's Motion for Summary Judgment, the Defendant's position is that The Arena and The Coliseum constitute one "entertainment complex," large enough to encompass two postal addresses, and that neither is an independent legal entity. Doc. 45, p. 2.

### II. *STANDARD*

The Court should grant summary judgment if it is satisfied that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law" after reviewing the pleadings, discovery and disclosure materials on file, and any supporting affidavits. Fed. R.Civ.P. 56(a). Issues of fact are genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those that will affect the outcome of the trial under governing law. *Id.* at 248, 106 S.Ct. 2505.

The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record, including pleadings, depositions, answers to interrogatories, and affidavits, demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir.2004). That moving party's burden may also be discharged by showing the district court that "there is an absence of evidence to support the nonmoving party's case" *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548. When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324, 106 S.Ct. 2548. In determining whether a genuine issue of

material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Swisher Int'l, Inc. v. Schafer,* 550 F.3d 1046, 1050 (11th Cir.2008).

## III. ANALYSIS

### A. The Policy unambiguously defines the "insured premises" as The Coliseum Center For Performing Arts at 176 N. Beach Street.

According to the principles of contract interpretation, a court must first examine the natural and plain meaning of an insurance policy's language. *Key v. Allstate Ins. Co.,* 90 F.3d 1546 (11th Cir. 1996). The interpretation of an insurance policy is a question of law to be determined by the Court. *Fireman's Fund Ins. Co. v. Tropical Shipping and Constr. Co.,* 254 F.3d 987, 1003 (11th Cir.2011). Indeed, "Under Florida law, if the terms of an insurance contract are clear and unambiguous, a court must interpret the contract in accordance with its plain meaning, and unless an ambiguity exists, a court should not resort to outside evidence or the complex rules of construction to construe the contract." *Key,* 90 F.3d at 1549. Here, the Court concludes that, based on its express and plain terms, Founder's Policy No. CPFL000279, insures NBSI against liability arising from the selling, serving, or furnishing alcoholic beverages, only at "The Coliseum" located at 176 North Beach Street in Daytona Beach, Florida.

The parties have stipulated that Founders issued Policy No. CPFL000279 to 176 N. Beach Street, Inc., for the policy period from September 11, 2008 through September 11, 2009. Doc. 44, ¶ 2. The Policy defines "insured premises" as:

[T]he premises shown in the Declarations, and any premises acquired by you during the policy period and over which you maintain ownership or majority interest for use in manufacturing, distributing, selling, serving or furnishing alcoholic beverages if you notify us within thirty (30) days after the acquisition and pay the applicable premium.[1]

(Doc. 40–1, p. 46). As noted, the declarations page designated the "insured location address" as:

COLISEUM CENTER FOR PERFORMING
ARTS 176 N BEACH STREET INC
176 N BEACH ST
DAYTONA BEACH FL 32114

(Doc. 40–1, p. 2.).

Plaintiff cites cases interpreting virtually identical terms and finding no ambiguity in the term "insured premises" when defined as "the premises designated in the declarations." *Acceptance Ins. Co. v. Segal, Segal & Lieberman, et. al.,* Civ. A. No. 93–0299, 1994 WL 12114, *5 (E.D.Pa. Jan. 14, 1994) (finding, where declarations identified the "insured premises" by physical address as "816 Chestnut Street, Philadelphia, PA 19107" that the insurance company was liable only for damages arising out of the operation at that specific address); *Bailes v. Erie Ins. Prop. & Cas. Co.,* 2010 WL 358768, *5 (S.D.W.Va. Jan. 25, 2010) (holding that where the "Carr Street Property" was not within the addresses defined as "insured location," in the policy, that address was unambiguously excluded from coverage). Accordingly, here the liquor liability provision of the Policy clearly applies only to injuries which occur as a result of the selling, serving, or furnishing alcoholic beverages at The Coliseum on 176 N. Beach Street.

---

**1.** No argument is made that The Arena at 180 North Beach Street constitutes a premises acquired by the insured during the policy period.

██ Defendant is correct that in the absence of ambiguity, a court may not look to parol evidence to ascertain the parties' intent with regard to an insurance contract.[2] Doc. 45, p. 11; *Moore v. Pa. Castle Energy Corp.*, 89 F.3d 791, 795 (11th Cir. 1996). Further, Defendant's attempts to create ambiguity in the term "insured premises" are unpersuasive. First, Defendant argues that "The Arena" and "The Coliseum" constitute a "single business premises" with the Arena occupying "the northern end of the premises" and The Coliseum at "the southern end of the premises," and thus summary judgment on the first issue is inappropriate. Doc. 45, p. 20. Citing the deposition of NBSI's President, the Tome Estate argues that although there were separate leases, the "north and south sections of the premises had to be leased jointly and simultaneously." Doc. 45, p. 15; Deposition of Randy Berner taken on May 24, 2011, Doc. 35–2 ("Berner Dep."), pp. 28–29. Indeed, in response to being asked whether he considered The Arena and The Coliseum to be one business, Berner testified that it is "one business to [him]." *Id.*, p. 56. However, the demonstration of shared business practices between The Arena and The Coliseum, considering their identical ownership, does not infuse ambiguity into the term "insured premises," the plain meaning of which refers to physical premises,

and does not say "insured business entity" or "insured corporation." Indeed, the Court should "not torture the language of the policy in order to create ambiguities." *Acceptance*, 1994 WL 12114, *4.

Next, Defendant's citation to a Florida statute, section 561.01(11), which provides an expansive definition of "licensed premises" for the purpose of Florida's Beverage laws, is similarly misplaced,[3] as the relevant definition is the one provided in the Policy. Doc. 45, pp. 10–11. The Court finds that the Policy language is unambiguous, and the liquor liability coverage provision is applicable to injuries which occur as a direct result of selling, serving, or furnishing alcoholic beverages at The Coliseum, located at 176 N. Beach Street.

Third, the Defendant argues that limiting the issue of liability to the definition of "insured premises" disregards another basis for liability stemming from the Policy, for "causing or contributing to the intoxication of any person." Doc. 45, pp. 8–9. Defendant contends that the exclusions specifically eliminate (and thus the coverage extends to) indemnities for which the insured may be held liable for reason of "the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol." Doc. 40–1, p. 47. Defendant cites the deposition testimony of Kyle Lavelle, recalling that Weston Tome was given a wrist band at The

---

**2.** Yet even if the Court were to find ambiguity in the Policy term, further facts support the conclusion that the Policy applies only to The Coliseum located at 176 North Beach Street. The existence of a separate insurance policy issued by Lantana for "180 N. Beach Street" undermines the credibility of the argument that Founder's Policy was meant to apply to both premises, or that they are indeed one complex/premises. On a commercial insurance application for The Arena, NBSI clearly identifies the applicant as "Arena Sports Café" and lists the premises location as 180 N. Beach Street, Daytona, FL 32114. Exhibit to the Deposition of Paul DiFerdinand, taken

June 10, 2011, "DiFerdinand Dep." (Doc. 35–5). The Lantana insurance documents indicate NBSI's intent to seek separate coverage for The Arena and The Coliseum.

**3.** " 'Licensed Premises' means not only rooms where alcoholic beverages are stored or sold by the licensee, but also all other rooms in the building which are so closely connected therewith as to admit of free passage from drink parlor to other rooms over which the licensee has some dominion or control." Fl. Stat. 561.01.

Arena on the night of October 30, 2008 by someone presumably employed by NBSI. Doc. 45, p. 9; Doc. 45-3, pp. 89-90. The Tome Estate apparently argues that because an NBSI employee at The Arena furnished Tome with a wrist band, incorrectly indicating he was of legal drinking age, NBSI furnished alcohol to Tome in a manner covered by the Policy. This argument constitutes a stretch of the Policy's section on liquor liability coverage, which applies coverage to injury occurring "as a direct result of an 'insured' selling, serving, or furnishing alcoholic beverages on the 'insured premises' during the policy period." Doc. 40-1, p. 40. It would be illogical to construe the language in the exceptions paragraph as not pertaining to the immediately preceding paragraph's explicit limitation of coverage to "insured premises."

As the Policy's coverage unambiguously applies to events occurring only at The Coliseum, there is no duty for Founders to defend against injuries not covered by the Policy. Despite Defendant's arguments about the expansive nature of an insurer's duty to defend,[4] Florida law provides that "the duty to defend ceases when it is shown that there is no potential for coverage[.]" *Underwriters at Lloyds London v. STD Enter., Inc.,* 395 F.Supp.2d 1142, 1146 (M.D.Fla.2005). Here, coverage is not extended to losses arising from the sale, service or furnishing of alcohol at The Arena located at 180 North Beach Street. Founders is, therefore, entitled to judgment on this issue as a matter of law.

## B. *No genuine issue of material fact exists as to whether Weston Tome consumed alcohol in The Coliseum.*

Given Founders' Policy provides coverage for the provision of alcohol in The Coliseum, summary judgment for Founders is not appropriate if Defendant raises a genuine issue of material fact as to whether Weston Tome was sold, served, or furnished alcoholic beverages on the insured premises of The Coliseum at 176 N. Beach Street. Founders avers that "the discovery in this action has not revealed any evidence to support The Estate's allegation that, on the evening of October 30-31, 2008, Weston Tome was sold, served or furnished alcohol at The Coliseum. In fact, there is a complete lack of evidence to support such allegation." Doc. 33, p. 4. In contrast, the Tome Estate claims that "there is sufficient evidence from which a jury may conclude an employee at the north/Coliseum end of the premises sold or furnished alcohol to the underaged decedent." Doc. 45, p. 2.

Founders notes that in response to its interrogatories asking for any indication that Weston Tome was a patron of The Coliseum on the night of the accident, the Tome Estate repeated the statement that Tome was present "on the premises of 176 N. Beach Street, Inc.," because of Defendant's position that both The Arena and The Coliseum constitute the insured premises for Policy No. CPFL000279.[5] Doc. 54, p. 16. The rec-

---

**4.** Defendant argues that the duty to defend under Florida law is triggered if the allegations "at least marginally and by reasonable implication" fall within coverage. Doc. 45, p. 19; *Klaesen Bros., Inc. v. Harbor Ins. Co.,* 410 So.2d 611, 613 (Fla. 4th DCA 1982). The Court acknowledges that differing interpretations of the same term is evidence of ambiguity, **particularly when a term is not explicitly**

defined or clarified by the policy. *Dahl-Eimers v. Mut. of Omaha Life Ins. Co.,* 986 F.2d 1379, 1381-82 (11th Cir.1993) (emphasis added). The Court simply does not find ambiguity with regard to the designation of "insured premises" in Founders Policy No. CPFL000279.

**5.** Indeed, Defendant relies heavily upon its argument that the two venues are one individ-

ord reflects that NBSI's President Randy Berner was unable to produce documentation showing the sale of alcohol to Tome at The Coliseum, and in responding to Founders' requests for production, Defendant acknowledged that it had no documentation, including but not limited to sales receipts, banking statements and/or credit card statements to support the allegation that The Coliseum "knowingly sold alcoholic beverages to Weston Tome." *Id.,* p. 16; Doc. 33–5. Indeed, Defendant has not produced the testimony of any witness or identified any document to establish that Weston Tome was sold, served or furnished alcoholic beverages at The Coliseum on the night in question. Susan Tome, the decedent's mother, did not provide any testimony to support the allegation that Weston Tome was sold, served or furnished alcoholic beverages at The Coliseum on the night in question. Tone Dep., Doc. 35–1, pp. 75, 78.

In response to Plaintiff's Motion for Summary Judgment, Defendant offers the following link of events as evidence that Weston Tome may have been a patron at The Coliseum: (1) Kyle Lavelle's testimony that The Coliseum was like a "ghost town" and "empty" on the night in question; (2) Berner's similar recollection that there were no more than twenty to thirty patrons that evening; (3) The Coliseum's total sales receipts registered $157.00; (4) Lavelle's recollection that while at The Arena that evening, Tome took shots that he thought may have been tequila, also drank beer, and his method of payment was "probably cash"; and that (5) receipts from The Coliseum reflect cash sales after 10:30 p.m. including beer, tequila, and an

"open shot." Doc. 45, p. 6; Lavelle Dep., Doc. 45–3; Berner Dep., Doc. 34–2. Defendants argue that because there were very few patrons at The Coliseum, Lavelle observed Tome drinking beer and possibly tequila at The Arena, and at least one beer and tequila were purchased at The Coliseum later that evening, this amounts to a reasonable inference that Weston Tome purchased drinks at The Coliseum. Doc. 45, p. 6. Finally, Defendant notes that upon being asked if he recalled whether Weston Tome went to The Coliseum on the night of the accident, Kyle Lavelle stated "It's a definite possibility." Doc. 45, p. 10; Lavelle Dep., Doc. 45–3, pp. 184–85.

Although Defendant is correct that a jury is entitled to draw all reasonable inferences from the evidence, *Sec. Exch. Comm'n v. Ginsburg,* 362 F.3d 1292, 1296 (11th Cir.2004), the chain of evidence it puts forward is simply too attenuated to constitute a genuine issue of fact, particularly in conjunction with a lack of any affirmative evidence that Tome was furnished with any drinks at The Coliseum. Defendant relies upon an impermissible pyramiding of inferences to attempt to create a genuine issue of material fact regarding whether Weston Tome was sold, served or furnished alcoholic beverages at The Coliseum on the night of October 30–31, 2008. The Tome Estate's failure to present evidence to support its claim against The Coliseum is, in itself, a proper basis for summary judgment. *Essex Builders Group, Inc. v. Amerisure Ins. Co.,* 485 F.Supp.2d 1302, 1307 (M.D.Fla. 2007). Moreover, with respect to the chain of inferences Defendant proffers, "[s]uppo-

---

ual complex, and that liability for any employee of NBSI, such as by an employee of The Arena giving Weston Tome a wristband wrongly indicating that he was of legal age, implicates action at The Coliseum. Doc. 45, pp. 8–10. Given the Court's finding that the

Policy unambiguously applies to The Coliseum, located at 176 N. Beach Street, evidence that Weston Tome was served alcohol at The Arena, located at 180 N. Beach Street, will not constitute a genuine issue of material fact for this issue.

sition is not the same as reasonable inference, and speculation cannot substitute for evidence." *Id.* Additionally, the Court agrees with Founders that Lavelle's testimony that he cannot remember whether Weston Tome entered The Coliseum and/or whether he consumed alcohol while in The Coliseum, does not by itself create an issue of fact. Doc. 53, p. 5 n. 1; *Thomas v. New Commodore Cruise Lines Ltd.,* 202 F.Supp.2d 1356, 1359 (S.D.Fla.2002) (determining that an issue of fact is not created by a witness who testified to the "mere possibility" of a particular fact, but who has no actual recollection of that fact).

Founders meets its burden for summary judgment by "pointing to an absence of evidence to support the nonmoving party's case." *Boudreaux v. Swift Trans. Co.,* 402 F.3d 536, 544–45 (5th Cir.2005). The Tome Estate has failed to provide more than speculative or attenuated pieces of evidence that The Coliseum sold, served, or furnished Weston Tome alcoholic beverages on the insured premises of 176 N. Beach Street. As no genuine issues of material fact exist, Founders is entitled to judgment on this issue as a matter of law.

## IV. CONCLUSION

For the aforementioned reasons, the Court concludes that Plaintiff Founders Insurance Company is entitled to judgment in its favor as a matter of law. Accordingly, it is hereby

**ORDERED** and **ADJUDGED:**

1. Plaintiff Founders Insurance Company's Motion for Summary Judgment (Doc. 33) is **GRANTED.**

2. Coverage does not exist under Policy No. CPFL000279 issued by Founders Insurance Company to 176 N. Beach Street, Inc. for the claims presented by Defendant Susan Tome, as personal representative of the estate of Weston Tome,

against NBSI. Therefore, Plaintiff Founders Insurance Company has no duty to defend or indemnify NBSI against claims by the Tome Estate.

3. The Clerk is directed to terminate all pending motions as moot. A Declaratory Judgment will be entered by separate Order of the Court.