**Aung Lin WAI, Plaintiff,**

v.

**RAINBOW HOLDINGS, M.T.M. Ship Management Pte. Ltd., and M.T. Maritime Management (USA) LLC, in personam, and M/T Chembulk Westport, in rem, Defendants.**

No. 03–61197–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Dec. 7, 2004.

Guilford & Rash, Miami, Julio Jesus Ayala, Jr., Crew Member Advocacy Center, Fort Lauderdale, FL, for Aung Lin Wai, plaintiff.

William R. Boeringer, Hayden & Milliken; Coral Gables, FL, for Rainbow Holdings, M.T.M. Ship Management Pte. Ltd., M.T. Maritime Management (USA) LLC, In Personam, defendants.

### ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF M.T. MARITIME MANAGEMENT (USA) LLC

ALTONAGA, District Judge.

**THIS CAUSE** came before the Court upon Defendants, Rainbow Holdings, M.T.M. Ship Management Pte. Ltd. ("MTM–Singapore"), and M.T. Maritime Management (USA) LLC's ("MTM–U.S.A.['s]") Motion to Dismiss **[D.E. 15]**, which the Court converted, in part, to a motion for summary judgment on February 23, 2004 [D.E. 42]. The Court heard oral argument on October 15, 2003 and has reviewed the parties' written submissions, pertinent portions of the record, and the applicable law.

### I. PROCEDURAL HISTORY

On June 19, 2003, Plaintiff, Aung Lin Wai, filed a civil action to recover damages for injuries that he suffered on May 9, 2003 aboard the M/T Chembulk Westport, while working as a member of the ship's crew. (D.E.1.) Mr. Wai's Complaint alleges claims of negligence under the Jones Act, unseaworthiness, failure to provide maintenance and cure, and failure to treat. It also contains a count for failure to pay wages under 46 U.S.C. § 10313, which the Court dismissed on May 15, 2004 without prejudice upon Mr. Wai's motion to voluntarily dismiss the count. (D.E.48.) On October 16, 2003, the Court dismissed the Complaint without prejudice against the *in rem* Defendant, M/T Chembulk Westport, for lack of jurisdiction over the vessel. (D.E.35.)

On August 11, 2003, Defendants, Rainbow Holdings, MTM–Singapore, and MTM–U.S.A., moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, under Rule 12(b)(3) for improper venue, and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (D.E.15.) Defendants argued that Mr. Wai's employment agreement contained a clause requiring that litigation of all employment-related disputes

be conducted in Singapore. (*Id.* at 3.) They further argued that U.S. choice-of-law principles required the Court to apply Singapore law, which would weigh in favor of dismissal. (*Id.* at 15.) Finally, they asked for a ruling that service of process was defective under Federal Rule of Civil Procedure 4, even though they had accepted service *de facto* and waived re-service. (*Id.* at 16.)

On February 23, 2004, the Court issued an Order on Defendants' Motion to Dismiss. (D.E.42.) The Court ruled that Defendants' argument for dismissal based on lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) was unavailing and declined to rule on the moot issue of whether service was proper. (*Id.* at 9 n. 4, 24.) The Court did, however, rule that Defendants' arguments based on the forum selection clause in Mr. Wai's employment agreement (improper venue) and choice-of-law principles (*forum non conveniens*) were properly brought as motions to dismiss for improper venue under Rule 12(b)(3). (*Id.* at 9–10.) Nevertheless, the Motion to Dismiss on the basis of the forum selection clause was denied because the clause was merely a permissive "consent to jurisdiction" clause rather than a "mandatory" clause limiting the forum exclusively to Singapore. (*Id.* at 17–18.) The Court also denied the Motion on the basis of *forum non conveniens*, concluding that it was premature to conduct the choice-of-law analysis required by *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), and *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970). (*Id.* at 21–23.)

While Defendants' Motion to Dismiss under Rules 12(b)(1) and 12(b)(3) was denied, the portion of the Motion under Rule 12(b)(6) survived. The Court ruled that MTM-U.S.A.'s argument that its connection to Mr. Wai and the M/T Chembulk Westport was too tenuous to establish liability was properly considered a motion to dismiss for failure to state a claim under Rule 12(b)(6). (*Id.* at 11.) The Court, however, concluded that it would have to consider matters outside of the pleadings to decide the Rule 12(b)(6) motion and therefore converted it to a motion for summary judgment under Rule 56. (*Id.* at 12.) The parties were given an opportunity to conduct discovery and provide supplemental briefing, and the issue is now ripe for decision. The sole issue under consideration is whether MTM–U.S.A.'s connections to Mr. Wai and the M/T Chembulk Westport are sufficient to establish MTM–U.S.A.'s liability for Mr. Wai's injuries under the Jones Act or general maritime law of the United States.

## II. *FACTUAL BACKGROUND*

The following facts are not in dispute. Mr. Wai was employed as an Assistant Chief Officer aboard the M/T Chembulk Westport from February 2003 until his injury on May 9, 2003. His duties included vessel navigation and acting as the radio accountant. Mr. Wai boarded the M/T Chembulk Westport in China. He was hired by MTM–Singapore and signed an employment agreement with the company in which he agreed to abide by the terms of a collective bargaining agreement made between MTM–Singapore and the government of Myanmar's Seamen Employment Control Division. Mr. Wai is a citizen of Myanmar (the former Burma) and is currently seeking asylum in the United States.

The M/T Chembulk Westport is a Liberian-flagged chemical tanker. Its disponent owner is Rainbow Holdings, a Liberian corporation which is owned by Srategic Shipping Inc., also a Liberian corporation. As explained more fully below, Strategic

Shipping also indirectly owns both MTM–Singapore and MTM–U.S.A. MTM–U.S.A. acts as a cargo agent for the M/T Chembulk Westport, and the vessel's crew regularly sends operational reports to MTM–U.S.A. Mr. Wai also submitted evidence that MTM–U.S.A. and Rainbow Holdings have common management and share a common address.

Notwithstanding its relationship to Rainbow Holdings and MTM–Singapore, MTM–U.S.A. argues that it is not liable under the Jones Act or the general maritime law for Mr. Wai's injuries because it never owned or chartered the M/T Chembulk Westport nor employed Mr. Wai. Mr. Wai, on the other hand, argues that genuine issues of material fact exist regarding the true ownership, operation, and control of the M/T Chembulk Westport.

### III.  *LEGAL STANDARD*

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir.1997), and "must resolve all reasonable doubts about the facts in favor of the non-movant," *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of America*, 894 F.2d 1555, 1558 (11th Cir.1990).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. 2505. Likewise, a dispute about a material fact is a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. In those cases, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. 2548.

### IV.  *ANALYSIS*

MTM–U.S.A. argues that Mr. Wai fails to state a cause of action against it under the Jones Act or the general maritime law because it never owned, operated, or chartered the M/T Chembulk Westport nor

ever employed Mr. Wai. Specifically, the Defendants submitted employment agreements signed by Mr. Wai and MTM–Singapore. (D.E. 15 Exs. B, C.) Defendants also submitted an affidavit of Maung Win Kyaw, the Sea Personnel Manager of MTM–Singapore, stating that MTM–Singapore, a Singapore limited liability company with its principal place of business in Singapore, acts as the managing owner of the M/T Chembulk Westport, responsible for hiring the crew. (D.E. 21 ¶¶ 1, 6.) Mr. Kyaw also stated that the M/T Chembulk Westport's disponent owner is Rainbow Holdings, which is owned by Strategic Shipping, Inc. (Id. ¶¶ 7, 9.) According to Mr. Kyaw, the majority of Strategic Shipping's shareholders are in Singapore, and all of the officers and directors of Rainbow Holdings and Strategic Shipping, except for one person, are also in Singapore. (Id. ¶ 9.)

Regarding MTM–U.S.A., Mr. Kyaw stated that it acts as an agent for various shipowners and operators, including as a cargo operator for the M/T Chembulk Westport in the United States, but that MTM–U.S.A. "does not charter the vessel and does not hire the crew, and acts as an agent only on behalf of its clients." (Id. ¶ 11.) MTM–U.S.A. also submitted an affidavit of Captain Don Carroll, an executive with MTM–U.S.A., stating that MTM–U.S.A. acts as a cargo agent for various vessels, including the M/T Chembulk Westport, in which role it "books cargo, and coordinates and plans logistics for the shipment of cargo, including loading and discharge." (D.E. 47 Attach. ¶ 1–2.) According to Captain Carroll, MTM–U.S.A. has never been the owner or bareboat charterer of the M/T Chembulk Westport and has never chartered the vessel. (Id. ¶ 3.) Finally, Captain Carroll stated that MTM–U.S.A. is not the employer of the M/T Chembulk Westport's crew, that it does not direct crew operations, and that it

has never overseen Mr. Wai's activities or had the power to hire or fire him, pay him, or otherwise control him. (Id. ¶ 4.) MTM–U.S.A. therefore contends that it is an improper defendant to Mr. Wai's claims because it is neither his employer nor the vessel's owner.

## A. The Jones Act

The Merchant Marine Act of 1920, commonly known as the Jones Act, provides, in relevant part, the following:

> Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply .... Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.

46 U.S.C. app. § 688(a).

"As [this section] shows on its face, a seaman has the advantages of the Act only against his employer." *Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 788 n. 6, 69 S.Ct. 1317, 93 L.Ed. 1692 (1949). In deciding whether a shipowner's general agent was an "employer" under the Jones Act, the Supreme Court explained:

> We assume, without deciding, that ... the word "employment" should be construed so as to give protection to seamen for torts committed against them by those standing in the proximate relation of employer, and the rules of private agency should not be rigorously applied. Yet this Court may not disregard the plain and rational meaning of employment and employer to furnish a

seaman a cause of action against one completely outside the broadest lines or definitions of employment or employer. We have no doubt that, under the Jones Act, only one person, firm, or corporation can be sued as employer.

*Id.* at 790–91, 69 S.Ct. 1317 (footnote omitted).

■ Notwithstanding the Supreme Court's statement that "only one person, firm, or corporation can be sued as employer," the former Fifth Circuit [1] has recognized the "borrowed servant doctrine." *See, e.g., Baker v. Raymond Int'l, Inc.,* 656 F.2d 173, 178 (5th Cir. Unit A Sept.1981); *Guidry v. S. La. Contractors, Inc.,* 614 F.2d 447, 452 (5th Cir.1980); *Spinks v. Chevron Oil Co.,* 507 F.2d 216, 224 (5th Cir.1975), *overruled in part on other grounds by Gautreaux v. Scurlock Marine,* 107 F.3d 331, 339 (5th Cir.1997) (en banc); *Guidry v. Texaco, Inc.,* 430 F.2d 781, 784 (5th Cir.1970). "The borrowed servant doctrine is the functional rule that places the risk of a worker's injury on his actual rather than his nominal employer. It permits the injured worker to recover from the company that was actually directing his work. It may also determine which of the possible employers ultimately bears the cost of the injury." *Baker,* 656 F.2d at 178 (citing *Spinks,* 507 F.2d at 224–26).

■ When a seaman contends that one who did not sign his payroll checks is in fact his employer under the Jones Act, he must prove the employment relationship. *S. La. Contractors,* 614 F.2d at 455. "An injured worker may show that he was a borrowed servant at the time of his injury by establishing that the employer against whom recovery is sought had the power to control and direct the servant in

the performance of his work." *Baker,* 656 F.2d at 178 (internal quotation marks and citations omitted). Whether a borrowed servant relationship exists is a question of law. *Gaudet v. Exxon Corp.,* 562 F.2d 351, 357–58 (5th Cir.1977). There are several criteria for determining when a servant has been borrowed by another employer:

(1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?

(2) Whose work is being performed?

(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

(4) Did the employee acquiesce in the new work situation?

(5) Did the original employer terminate his relationship with the employee?

(6) Who furnished tools and place for performance?

(7) Was the new employment over a considerable length of time?

(8) Who had the right to discharge the employee?

(9) Who had the obligation to pay the employee?

*Baker,* 656 F.2d at 178 (quoting *Gaudet,* 562 F.2d at 355).

■ In this case, Mr. Wai fails to submit evidence showing that MTM–U.S.A. controlled his work to such an extent that it should be considered his borrowing employer and therefore "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477

---

1. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

U.S. at 322, 106 S.Ct. 2548. Mr. Wai submitted a copy of MT Maritime Management Group's website, which states, in part, that "[t]he chartering team at MTM–U.S.A. acts as agents for various ship owning and operating companies.... The staff at MTM–U.S.A. makes commercial and operational decisions for parcel tankers while in the Western Hemisphere as well as overall tonnage allocation, and handy size bulk carriers operated worldwide." (D.E.30.) This general description of MTM–U.S.A. is similar to the one that Mr. Kyaw provided on behalf of the Defendants. (See D.E. 21 ¶ 11.) It fails, however, to describe any specific actions that MTM–U.S.A. undertook to control any aspect of Mr. Wai's work onboard the M/T Chembulk Westport.

Similarly, Mr. Wai's affidavit describing his responsibilities as an Assistant Chief Officer on the M/T Chembulk Westport (D.E. 43 Ex. B) fails to show that MTM–U.S.A. controlled his work. Mr. Wai stated that he was responsible for vessel navigation and acted as the radio accountant. (Id. ¶ 4.) In this role, he prepared a monthly radio account report detailing the names, telephone, and fax numbers of those who received communications from the vessel (id. ¶ 5), and a list of MTM–U.S.A's superintendents who routinely received reports and other communications from the vessel was onboard the ship (id. ¶ 6). Mr. Wai stated that he regularly sent "noon position reports" indicating where the vessel was located and full reports at the end of every sea passage to both MTM–U.S.A. and MTM–Singapore detailing how many nautical miles were covered and how many hours were spent sailing. (Id. ¶¶ 7–9.) When the ship sailed from one port to another in the Western Hemisphere, however, only MTM–U.S.A. was kept constantly apprised about voyage plans and fuel usage. (Id. ¶ 10.) Although Mr. Wai's affidavit shows that the crew of the M/T Chembulk Westport regularly provided information to MTM–U.S.A., it fails to describe any communication ever received from MTM–U.S.A. Specifically, Mr. Wai fails to describe any communication from MTM–U.S.A., or provide any other evidence, indicating that MTM–U.S.A. controlled the vessel's operations, furnished equipment or tools, controlled the details of Mr. Wai's work, hired him, paid him, or had the authority to fire him.

Mr. Wai additionally provided evidence that MTM–U.S.A., MTM–Singapore, and Rainbow Holdings have common ownership and that MTM–U.S.A. and Rainbow Holdings have overlapping officers and share a common address. According to MT Maritime Management Group's website, Douglas P. McShane founded the MTM Group in 1979 with the establishment of M.T. Maritime Singapore Pte. Ltd. (D.E. 43 Ex. C) and holds the title "CEO MTM Group" (D.E.30). M.T. Maritime Management LLC ("MTM–LLC") is a Marshall Islands entity that acquired all of the outstanding shares of MTM–Singapore on March 28, 2002, according to financial statements provided by Mr. Wai. (D.E. 55 Ex. G.)

Mr. Wai also provided a "Limited Liability Company Agreement" showing that MTM–U.S.A. was formed on February 12, 2002 as a Delaware limited liability company with a sole member, MTM–LLC, and a sole initial management committee member, Mr. McShane. (D.E. 55 Ex. F at 1, 4.) The agreement was approved on behalf of MTM–LLC by its sole member, Strategic Shipping (id. at 10), which, according to Mr. Kyaw, is the entity that owns Rainbow Holdings (D.E. 21 ¶ 9). The evidence therefore shows that beginning in early 2002, Strategic Shipping owned both Rainbow Holdings and MTM–LLC, and MTM–LLC owned both MTM–Singapore and

MTM–U.S.A. Mr. Wai also submitted a "Baltic and International Maritime Council (BIMCO) Standard Ship Management Agreement" in which Rainbow Holdings listed its address where it was to receive notices as "c/o" MTM–U.S.A. in Westport, Connecticut. (D.E. 55 Ex. D.) Finally, Mr. Wai alleges that Mr. McShane is the secretary of Rainbow Holdings and executes time charter agreements on behalf of the company and, in support of this allegation, references several documents signed illegibly on behalf of Rainbow Holdings that unfortunately fail to state who signed on behalf of the company. (D.E. 55 Exs. C, E.)

Even if Mr. McShane had signed the documents on behalf of Rainbow Holdings, indicating that Rainbow Holdings and MTM–U.S.A. had overlapping management, this fact would not alone make MTM–U.S.A. Mr. Wai's employer for purposes of the Jones Act. *Mattes v. Nat'l Hellenic Am. Line, S. A.*, 427 F.Supp. 619, 629 (S.D.N.Y.1977). Moreover, the fact that MTM–U.S.A., MTM–Singapore, and Rainbow Holdings have a common owner and that MTM–U.S.A. and Rainbow Holdings share a common address is insufficient to permit the Court to ignore the "presumption of corporate separateness" to which entities—even in a Jones Act case—are legally entitled. *Banegas v. United Brands Co.*, 663 F.Supp. 198, 201 (D.S.C.1986). "[A]bsent a finding of fraud or bad faith, a corporation is entitled to a presumption of separateness from a sister corporation, even though both may be owned and controlled by the same entity." *Id.; see also Baker*, 656 F.2d at 180 ("[T]he stockholders in any adequately capitalized and legally operated corporation are immune from liability for its debts in the absence of the exceptional circumstances ... [which] the plaintiff bears the burden of proving ....") Furthermore, complete domination of an entity—not merely majority or complete stock control—is required to disregard the legal existence of a corporate entity. *Berger v. Columbia Broad. Sys., Inc.*, 453 F.2d 991, 995 (5th Cir.1972). There must be "total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation," and "fraud or injustice [must] proximately result from a misuse of this control by the dominant corporation." *Krivo Indus. Supply Co. v. Nat'l Distillers & Chem. Corp.*, 483 F.2d 1098, 1106 (5th Cir.1973).

Here, Mr. Wai has not submitted evidence indicating that MTM–U.S.A. dominated or controlled MTM–Singapore or Rainbow Holdings to such an extent that the Court should disregard their existence as separate legal entities with limited liability. He has also pointed to no example of fraud or injustice committed by MTM–U.S.A. Rather, the undisputed facts show that MTM–U.S.A. acted as a cargo agent for the M/T Chembulk Westport and that the vessel regularly sent operational reports to MTM–U.S.A. Also, the evidence taken in the light most favorable to Mr. Wai suggests that Mr. McShane is a common officer of MTM–U.S.A. and Rainbow Holdings and that the two entities share the same address. However, this is not a case where "the defendants so scrambled their relations as to render it difficult for anyone to say for a certainty whether the plaintiff was employed by only one or by all of them." *Armit v. Loveland*, 115 F.2d 308, 314 (3d Cir.1940).

Mr. Wai relies primarily on *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), *Fantome, S.A. v. Frederick*, No. 02–10890, 2003 WL 23009844 (11th Cir. Jan. 24, 2003), *Sigalas v. Lido Maritime, Inc.*, 776

F.2d 1512 (11th Cir.1985), and *Szumlicz v. Norwegian Am. Line, Inc.*, 698 F.2d 1192 (11th Cir.1983), for his argument that MTM–U.S.A. is a proper Jones Act defendant. The issue in those cases, however, was whether, under choice-of-law principles, the Jones Act should apply—not whether the plaintiff had sued the correct defendant under the Jones Act, which is the issue under consideration in the present Motion. It should be noted, too, that in *Sigalas*, an American entity ("Royal Cruise Lines (USA) Inc.") was related to the foreign defendant through common ownership but was not named as a defendant in the action. *See* 776 F.2d at 1512, 1514.

Here the undisputed facts compel the entry of summary judgment in favor of MTM–U.S.A. *See, e.g., Ryan v. United States*, 331 F.Supp.2d 371, 382 (D.Md.2004) (granting summary judgment because "conclusion was compelled as a matter of law that if Ryan enjoyed seaman status as to 'only one employer,' such status existed as to Noesis and not as to Chesapeake"); *Canty v. Bottacchi, S.A. de Navegacion*, 849 F.Supp. 1552, 1559 (S.D.Fla.1994) (granting summary judgment and finding that crane operators provided by crane owner were not "borrowed servants" of stevedore company which employed longshoremen). In this case, the undisputed facts show that Mr. Wai's direct employer was MTM–Singapore—the entity that hired him. Moreover, Mr. Wai has failed submit evidence to show that MTM–U.S.A. dominated MTM–Singapore or Rainbow Holdings or controlled Mr. Wai's work onboard the M/T Chembulk Westport to such an extent that it should be considered Mr. Wai's employer for purposes of the Jones Act.

## B. Unseaworthiness

■ Under the general maritime law, a vessel and its owner may be liable "for injuries received by seamen in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship." *The Osceola*, 189 U.S. 158, 175, 23 S.Ct. 483, 47 L.Ed. 760 (1903) (citation omitted).

What has been said is not to suggest that the owner is obligated to furnish an accident-free ship. The duty is absolute, but it is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service.

*Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960) (citation omitted).

■ Damages for unseaworthiness of a vessel are "traditionally only available against the shipowner and the vessel." *Stokes v. B.T. Oilfield Services, Inc.*, 617 F.2d 1205, 1207 (5th Cir.1980). "Under settled principles of admiralty law, liability for unseaworthiness ... turns upon who possessed control of the ship such that it could best be charged as the owner at the time the accident occurred." *Rodriguez v. McAllister Bros., Inc.*, 736 F.2d 813, 815 (1st Cir.1984).

To be held liable for breach of the duty, the defendant must be in the relationship of an owner or operator of a vessel. A bareboat or demise charter ... whereby the charterer assumes full possession and control of the vessel, constitutes the only form of charter that purports to invest temporary powers of ownership in the charterer and, therefore, constitutes the only conceivable basis on which the vessel owner could seek

to escape liability for the unseaworthiness of his vessel.

*Baker,* 656 F.2d at 181–182 (internal quotation marks, footnote, and citations omitted). "It has long been recognized in the law of admiralty that for many, if not most, purposes the bareboat charterer is to be treated as the owner, generally called owner *pro hac vice.* . . . [B]arring explicit statutory exemption, the bareboat charterer is personally liable for the unseaworthiness of a chartered vessel, and . . . this liability will support a libel in rem against the vessel." *Reed v. S.S. Yaka,* 373 U.S. 410, 412–13, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963) (footnotes omitted). If a seaman is injured by a vessel's unseaworthiness, he may sue its owner or bareboat charterer: "The allocation of ultimate liability should be the responsibility of the owner and charterer, who 'can sort out which between them will bear the final cost of recovery.' " *Baker,* 656 F.2d at 184 (quoting *Spinks,* 507 F.2d at 225).

█ In this case, Mr. Wai argues that genuine issues of material fact exist as to whether MTM–U.S.A. is the owner or operator of the M/T Chembulk Westport. However, the undisputed facts show that MTM–U.S.A. is neither the owner nor the bareboat charterer of the vessel. For example, Mr. Wai submitted a "Certificate of Ownership and Encumbrance" issued by the Republic of Liberia, Bureau of Maritime Affairs, stating that the M/T Chembulk Westport is registered under the Liberian flag and is owned 100% by Rainbow Holdings. (D.E. 55 Ex. B.) Mr. Wai also submitted an addendum to a "Time Charter Party Dated December 31, 1994" showing that from January 1, 2003 until December 31, 2003—the relevant time period for Mr. Wai's May 9, 2003 injury—Chembulk Trading LLC chartered the M/T Chembulk Westport from its owner, Rainbow Holdings. (D.E. 55 Ex. C.) Also,

the BIMCO "Standard Ship Management Agreement," which lists Rainbow Holdings' address to receive notices as "c/o" MTM–U.S.A., shows Rainbow Holdings as the "owner" and MTM–Singapore as the "manager" of the vessel. (D.E. 55 Ex. D.) This is consistent with Mr. Kyaw's statement that MTM–Singapore acts as the managing owner of the M/T Chembulk Westport. (D.E. 21 ¶ 6.) Finally, although Mr. Wai stated in his affidavit that the crew of the M/T Chembulk Westport regularly provided information to MTM–U.S.A., he failed to describe any communication received from MTM–U.S.A. or provide other evidence showing that MTM–U.S.A. controlled the operations of the vessel. (*See* D.E. 43 Ex. B.) Because MTM–U.S.A. is not the owner of the M/T Chembulk Westport, nor its owner *pro hac vice,* it is not a proper defendant to Mr. Wai's unseaworthiness claim.

## C. Maintenance and Cure

█ The general maritime law provides that a "vessel and her owners are liable, in case a seaman falls sick, or is wounded, in the service of the ship, to the extent of his maintenance and cure, and to his wages, at least so long as the voyage is continued." *The Osceola,* 189 U.S. at 175, 23 S.Ct. 483.

The duty, which arises from the contract of employment, does not rest upon negligence or culpability on the part of the owner or master, nor is it restricted to those cases where the seaman's employment is the cause of the injury or illness. It is not an award of compensation for the disability suffered, although breach of the duty may render the owner liable for the consequential damages suffered by the seaman. The maintenance exacted is comparable to that to which the seaman is entitled while at sea, and "cure" is care, including nursing and

medical attention during such period as the duty continues.

*Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 527–28, 58 S.Ct. 651, 82 L.Ed. 993 (1938) (citations omitted). "The duty to make such provision is imposed by the law itself as one annexed to the employment." *Cortes v. Baltimore Insular Line, Inc.*, 287 U.S. 367, 371, 53 S.Ct. 173, 77 L.Ed. 368 (1932) (citation omitted). "Since the right arises out of the employment relationship, the employer is the person liable." *Solet v. M/V Capt. H.V. Dufrene*, 303 F.Supp. 980, 987 (D.La.1969) (quoting Gilmore & Black, *Admiralty* 256 (1957)).

■ "Maintenance, cure, and wages ... [are] the particular responsibility of the employer, unlike the liability for unseaworthiness, which arises directly from ownership of the vessel." *Baker*, 656 F.2d at 185. In this case, Mr. Wai fails to identify evidence showing that MTM–U.S.A. is his employer. *See supra* Part IV.A. Therefore, in this case, like a "typical case," Mr. Wai "is required to look no further than the desk at which he signed articles to locate his employer." *Id.* Here, that entity is not MTM–U.S.A.

**D. Failure to Treat**

■ A shipowner has a duty to promptly provide adequate emergency medical care, as is reasonable under the circumstances, for an injured seaman. *Garay v. Carnival Cruise Line, Inc.*, 904 F.2d 1527, 1533 n. 6 (11th Cir.1990).

This naturally follows from the nature of the seaman's work. Even if injured through his own willful misconduct, the seaman is at the mercy of the shipowner. The seaman may be many miles offshore, unable to leave the ship and unable to obtain his own medical care. The law, therefore, requires the shipowner to provide such prompt and ade-

quate medical care as is reasonable under the circumstances.

*Id.* In *Garay*, the Eleventh Circuit referred to the seaman's cause of action as a "Jones Act claim on prompt and adequate medical care." *Id.* at 1532. The Second Circuit has also analyzed a seaman's cause of action for "failure to provide prompt, adequate and proper medical treatment" as a negligence claim. *Barlow v. Pan Atlantic S.S. Corp.*, 101 F.2d 697, 698 (2d Cir.1939). The Court therefore concludes that the fourth count of Mr. Wai's Complaint for "Failure to Treat" is properly considered a claim of negligence under the Jones Act. As discussed in Part IV.A. above, Mr. Wai has failed to provide evidence showing that MTM–U.S.A. should be considered Mr. Wai's employer for purposes of the Jones Act. It would therefore be improper in this case to assign the duty to provide emergency medical care for the crew of the M/T Chembulk Westport to an entity that was not in a position to control the activities onboard the vessel.

## V. *CONCLUSION*

For all the reasons stated above, it is

· **ORDERED AND ADJUDGED** that MTM–U.S.A.'s Motion to Dismiss, which the Court converted to a motion for summary judgment [D.E.15] is **GRANTED.** All counts of the Complaint are **DISMISSED** against MTM–U.S.A.